WADELL NICHOLSON, Petitioner/Appellee v. ALEXANDER KILLENS, COMMISSIONER, NORTH CAROLINA DIVISION OF MOTOR VEHICLES, Respondent/Appellant

No. 937SC969

(Filed 4 October 1994)

**Automobiles and Other Vehicles § 93 (NCI4th)— refusal of breathalyzer test—notification of rights—failure to take before second officer—rescission of mandatory license revocation**

Where the charging officer designated that a chemical analysis of petitioner's breath was to be performed, and petitioner refused a breathalyzer test, the charging officer's failure to take petitioner before another officer to inform petitioner both orally and in writing of the rights enumerated in N.C.G.S. § 20-16.2(a) required that the trial court rescind the DMV's mandatory twelve-month revocation of petitioner's driver's license under N.C.G.S. § 20-16.2(d) for willful failure to submit to breath analysis.

**Am Jur 2d, Automobiles and Highway Traffic § 130.**

**Suspension or revocation of driver's license for refusal to take sobriety test. 88 ALR2d 1064.**

Appeal by respondent from order entered 28 June 1993 by Judge Richard B. Allsbrook in Nash County Superior Court. Heard in the Court of Appeals 12 May 1993. Reheard upon motion in the Court of Appeals on 7 September 1994.

This appeal arises from a proceeding in Superior Court contesting the mandatory revocation of petitioner's driver's license pursuant to G.S. 20-16.2(d) for his willful failure to submit to chemical analysis of his breath.

Here, the parties stipulated in writing to the following facts:

1. Petitioner was arrested on January 8, 1993, at 11:30 P.M. by Trooper R. C. Wilder for an implied consent offense.

2. Trooper Wilder had reasonable grounds to believe that petitioner had committed an implied consent offense.

3. Trooper Wilder transported petitioner to a breathalyzer room for the purpose of requesting him to submit to a chemical analysis of his breath.

4. Trooper Wilder advised petitioner of his rights enumerated in G.S. 20-16.2(a).

5. Trooper Wilder is a certified chemical analyst in accordance with G.S. 20-139.1.

6. At 12:22 A.M., Trooper Wilder requested petitioner to submit to a chemical analysis of his breath.

7. Trooper Wilder used an Intoxilyzer 5000 instrument.

8. Petitioner told Trooper Wilder that he was not going to submit to the chemical analysis of his breath and did not submit to the test.

9. Trooper Wilder reported petitioner as having willfully refused to submit to a chemical analysis of his breath at 12:33 A.M.

After a hearing on 2 June 1993, the trial court entered an order rescinding the administrative revocation of petitioner's driver's license because "[p]etitioner was not notified of his rights as required

NICHOLSON v. KILLENS

[116 N.C. App. 473 (1994)]

by subsection (a) of G.S. 20-16.2 and therefore condition (4) as set out in [G.S. 20-16.2(d)] was not met." Respondent appeals.

*Moore, Diedrick, Carlisle & Hester, by Lawrence G. Diedrick, for petitioner-appellee.*

*Attorney General Michael F. Easley, by Assistant Attorney General Bryan E. Beatty, for respondent-appellant.*

EAGLES, Judge.

In its sole assignment of error, respondent argues that the trial court erred in this civil proceeding in ordering a rescission of the DMV order of revocation of petitioner's license because respondent contends petitioner was properly advised of his rights under G.S. 20-16.2(a). After careful review, we disagree and affirm.

G.S. 20-16.2 provides:

(a) Basis for Charging Officer to Require Chemical Analysis; Notification of Rights.—. . . .

Except as provided in this subsection or subsection (b), before any type of chemical analysis is administered the person charged must be taken before a chemical analyst authorized to administer a test of a person's breath, who must inform the person orally and also give the person a notice in writing that:

(1) He has a right to refuse to be tested.

(2) Refusal to take any required test or tests will result in an immediate revocation of his driving privilege for at least 10 days and an additional 12-month revocation by the Division of Motor Vehicles.

(3) The test results, or the fact of his refusal, will be admissible in evidence at trial on the offense charged.

(4) His driving privilege will be revoked immediately for at least 10 days if:

a. The test reveals an alcohol concentration of 0.08 or more; or

b. He was driving a commercial motor vehicle and the test reveals an alcohol concentration of 0.04 or more.

(5) He may have a qualified person of his own choosing administer a chemical test or tests in addition to any test administered at the direction of the charging officer.

(6) He has the right to call an attorney and select a witness to view for him the testing procedures, but the testing may not be delayed for these purposes longer than 30 minutes from the time he is notified of his rights.

If the charging officer or an arresting officer is authorized to administer a chemical analysis of a person's breath and the charging officer designates a chemical analysis of the blood of the person charged, the charging officer or the arresting officer may give the person charged the oral and written notice of rights required by this subsection.

. . . .

(c) Request to Submit to Chemical Analysis; Procedure upon Refusal.—The charging officer, in the presence of the chemical analyst who has notified the person of his rights under subsection (a), must request the person charged to submit to the type of chemical analysis designated. If the person charged willfully refuses to submit to that chemical analysis, none may be given under the provisions of this section, but the refusal does not preclude testing under other applicable procedures of law. Then the charging officer and the chemical analyst must without unnecessary delay go before an official authorized to administer oaths and execute an affidavit stating that the person charged, after being advised of his rights under subsection (a), willfully refused to submit to a chemical analysis at the request of the charging officer. . . .

(d) Consequences of Refusal; Right to Hearing before Division; Issues.—. . . . If the person properly requests a hearing, he retains his license, unless it is revoked under some other provision of law, until the hearing is held, the person withdraws his request, or he fails to appear at a scheduled hearing. . . . The hearing must be conducted in the county where the charge was brought, and must be limited to consideration of whether:

(1) The person was charged with an implied-consent offense;

(2) The charging officer had reasonable grounds to believe that the person had committed an implied-consent offense;

(3) The implied-consent offense charged involved death or critical injury to another person, if this allegation is in the affidavit;

(4) <u>The person was notified of his rights as required by subsection (a)</u>; and

(5) The person willfully refused to submit to a chemical analysis upon the request of the charging officer.

If the Division finds that the conditions specified in this subsection are met, it must order the revocation sustained. <u>If the Division finds that any of the conditions (1), (2), (4), or (5) is not met, it must rescind the revocation.</u>

G.S. 20-16.2 (emphasis added).

Preliminarily, it is important to emphasize that the matter at issue is the Superior Court's decision rescinding DMV's administrative decision which revoked petitioner's driver's license pursuant to G.S. 20-16.2. The matter at issue here does not involve the result of any jury trial for driving while impaired pursuant to G.S. 20-138.1 or any similar criminal offense.

Regarding the interpretation of statutes, our Supreme Court has stated that:

The intent of the legislature controls the interpretation of a statute. When the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein.

*In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388-89 (1978) (citations omitted). *See Carter v. Wilson Construction Co.*, 83 N.C. App. 61, 68, 348 S.E.2d 830, 834 (1986) ("Statutes imposing a penalty are to be strictly construed").

Notwithstanding the appellant's concession in oral argument that reading G.S. 20-16.2 in conjunction with G.S. 20-139.1 produces an ambiguous result, we conclude that the language of G.S. 20-16.2, the statute at issue here, is clear and unambiguous. It is uncontradicted that after he designated that a chemical analysis of petitioner's breath was to be performed, instead of a blood analysis, Trooper Wilder failed to take defendant before another officer to inform defendant both orally and in writing of the rights enumerated in G.S. 20-16.2(a).

This failure has no adverse effect whatever on any subsequent criminal prosecution for driving while impaired pursuant to G.S. 20-16.2 or any similar criminal offense. Likewise our decision here has no adverse effect whatever on the admissibility of the results of the breath analysis using an automated breath instrument that prints the result of its analysis, where a driver has agreed to submit to the breath analysis. However, in the context of the statutorily mandated twelve (12) month administrative revocation of driver's license for failure to submit to breath analysis, the failure to take petitioner before another law enforcement officer to advise petitioner of his rights pursuant to G.S. 20-16.2 is a fatal flaw.

This error could have been avoided if the initial law enforcement officer, upon hearing petitioner decline to submit to the breath analysis, had called for a second officer to advise petitioner of his rights pursuant to G.S. 20-16.2. Where a second officer was present and participating, the failure of defendant to submit would constitute a proper basis for the twelve month revocation for willful refusal to submit.

On this record, given the strict construction required in dealing with statutes that impose a penalty, we conclude that the trooper's failure to comply with G.S. 20-16.2(a) in the face of petitioner's refusal to submit must result in the rescission of the revocation of petitioner's license in this case. G.S. 20-16.2(d). We have carefully considered respondent's *in pari materia* argument regarding G.S. 20-139.1 in the briefs and upon oral argument. Though ably presented, we conclude that it is not persuasive. We do not disagree with appellant that G.S. 20-16.2 must be read in conjunction with G.S. 20-139.1 to determine the procedures governing the **administering** of chemical analyses. However, we conclude that G.S. 20-16.2, and that statute alone, sets forth the procedures governing **notification of rights** pursuant to a chemical analysis. "If and when the lawmaking body wishes to amend the statute, a few words will suffice. This Court must forego the opportunity to amend here." *Insurance Co. v. Bynum*, 267 N.C. 289, 292, 148 S.E.2d 114, 117 (1966).

In oral argument appellant expressed its concerns regarding the admissibility of the results of the breath analysis by the Intoxilyzer instrument, an automated breath instrument that prints the result of the analysis, in criminal trials for violations of Chapter 20. We emphasize that our decision here is limited to our careful interpretation of the governing statutes relating to the statutorily mandated twelve (12) month administrative revocation of petitioner's driver's license

for refusal to submit to breath analysis pursuant to G.S. 20-16.2. Our holding today is intended to apply to cases in which the issue has not been waived by petitioner's failure to raise the issue at the DMV hearing or at the *de novo* hearing in superior court or by petitioner's failure to properly preserve the issue on appeal to the appellate courts. Furthermore, our holding does not apply to cases in which petitioner did not exercise his rights of review of the DMV's determination.

For the reasons stated, the assignment of error fails and the trial court's order rescinding the DMV order of revocation is affirmed. This opinion supersedes our previous opinion filed in this case on 19 July 1994, *Nicholson v. Killens*, 115 N.C. App. 552, 445 S.E.2d 608 (1994).

Affirmed.

Judges LEWIS and WYNN concur.